# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

LAURA SCALLY,

    Plaintiff,

v.

HILCO RECEIVABLES, LLC, LAKE COOK PARTNERS, LLC, AND M.R.S. ASSOCIATES, INC.,

    Defendants.

No. 04 C 3035
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Laura Scally filed suit after receiving a collection letter that demanded payment on a defaulted debt. Scally claims that the dunning letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. Named as Defendants are Hilco Receivables, LLC ("Hilco"), Lake Cook Partners, LLC ("LCP"), and M.R.S. Associates, Inc. ("MRS"). Defendants Hilco and LCP seek summary judgment, arguing that Scally cannot prove, as required by the statute, that they acted directly or indirectly to collect her debt.[1]

Section 1692a of the FDCPA provides in part that:

> [t]he term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). Only debt collectors – not creditors – are subject to the provisions of the FDCPA. *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Assignees of

---

[1] Hilco is the sole member of LCP, which acts as a financing arm and partner to Hilco. For the sake of convenience, I refer only to Hilco for the remainder of this opinion.

debt already in default at the time of assignment ("bad debt") are considered debt collectors and are subject to the FDCPA. *Id*. (citing *Bailey v. Security Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998)). At first blush, Defendant Hilco falls neatly into this category, as it acquired Scally's debt (like that of many other consumers and to the tune of nearly $1 billion in outstanding debt) after she defaulted. Yet at least in the conventional sense, Hilco did not act directly to collect Scally's debt: Hilco never contacted Scally to collect the debt nor did Hilco mail the allegedly offending collection letter. Rather, Hilco outsourced the activity of debt collection to co-defendant MRS, which mailed the letter that is the basis of Scally's complaint.

At issue is whether Hilco acted indirectly when it contracted with MRS for the collection of Scally's debt. Alternatively, Scally argues that Hilco acted directly to collect her debt when it provided her information to a credit bureau – an argument I address at the conclusion of this opinion. Scally's primary argument is one of vicarious liability. In response, Hilco denies that it can be held liable for actions undertaken by MRS when MRS functioned as an independent contractor.[2]

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could

---

[2]On March 30, 2005 I granted (in part) Scally's motion for class certification. In that decision, I ruled that "for the purposes of class certification, Plaintiff has sufficiently alleged that Hilco/LCP is a 'debt collector' within the meaning of the FDCPA." I now reconsider that element of my ruling in light of the factual record developed by the parties.

find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Scally must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

**Factual Background**

Hilco purchases large amounts of defaulted credit card debt for ten cents on the dollar. For roughly three-quarters of the debt it acquires, Hilco enters into collection agreements with entities unrelated to Hilco or any of its subsidiaries. These entities, which include Defendant MRS, agree to collect or attempt to collect the outstanding debts in return for a contingency fee. In this case, Hilco (through Lake Cook), acquired Scally's bad debt from MBNA Bank. Hilco then referred Scally's account to MRS for collection pursuant to a "Recovery Agreement."

The Recovery Agreement gave MRS:

> full and complete authority to take all actions deemed appropriate
> in the ordinary course of its business including, but not limited to
> (1) contacting Accountholders (sic), (2) compromising, settling or
> releasing balances, (3) pursuing arbitration, provided no such
> arbitration shall be commenced unless HILCO agrees in writing,
> and (4) using third parties for purposes of skip tracing.

Once an account is referred to MRS, Hilco has little contact with debt-holders. Importantly, Hilco does not initiate any contact with debt-holders. In this case, it did not send any letters to Scally, nor did it contact her by telephone. Both parties agree that MRS sent the allegedly infringing communication at issue in this case to Scally and the other class members.

3

As part of its collection efforts, MRS asks debt-holders to remit payments directly to MRS. MRS holds all funds collected in a trust account for Hilco and reports collection activities to Hilco on a daily, weekly and monthly basis. Hilco will accept payment from debtors, should they contact Hilco and insist upon doing so. Otherwise, Hilco expects that payments will be made to MRS and that MRS will remit payment to it. MRS has authority to endorse and deposit checks made payable to Hilco (or the original debt-holder) in connection with an account. With respect to settling accounts, MRS is authorized under the terms of the Recovery Agreement to accept eighty percent or more of the amount of debt as payment in full. In order to settle at lower amounts, MRS must secure Hilco's approval.

Hilco makes no effort to govern the content of the communication between MRS and debt-holders beyond the terms outlined in the Recovery Agreement. Within the agreement, MRS promises that all of its customer contact will comply with applicable law and that MRS will only use Hilco's name in its communications with debtors in a manner approved by Hilco. Scally offers no evidence that Hilco inspected the letter MRS sent to her or otherwise authored or approved the content of the letter. On the basis of these facts, I must determine if MRS is an agent of Hilco such that Hilco might be vicariously liable for MRS's actions, or if there is any other basis for concluding that Hilco acted indirectly when it authorized MRS to collect Scally's debt on its behalf.[3]

---

[3]Scally makes no allegation, nor offers any facts to suggest that Defendant MRS is part of or otherwise affiliated with Hilco Receivables or its subsidiaries; therefore, a veil-piercing analysis is not appropriate. This is just as well for Scally, as there is a high burden for piercing the corporate veil, generally as well as in FDCPA cases. *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 876 (7th Cir. 2000) (holding that "[s]ave in exceptional circumstances . . . one affiliated corporation is not liable for the debts of the other . . . a principle applicable to suits under the Fair Debt Collection Practices Act") (citing *Pettit v.*

*Plaintiff's Theory of Indirect Debt Collection*

Scally grounds her "indirect collection" argument on a theory of vicarious liability, relying on a class of cases in which debt collectors were found liable for the actions of others retained to collect debt. She first points to cases imposing liability on debt collectors for the actions of counsel retained to engage in debt collection. *See, e.g., Kimber v. Federal Financial Corp.*, 668 F. Supp. 1480 (M.D. Ala. 1987). I am not persuaded that *Kimber*, decided outside of this Circuit and prior to changes in the language of §1692(a), requires a finding that Hilco should be similarly liable for the actions of MRS. The attorney in *Kimber* was not subject to the provisions of the FDCPA and could not be held liable for any FDCPA violations. *Id*. at 1486 (noting the then-applicable provision of §1692(a)(6)(F) that exempted any attorney from collecting debt on behalf of a client). The *Kimber* court was rightly concerned that extending the attorney's exemption from liability to the debt collector would "severely undermine the Act." *Id*. There is no such risk for Plaintiffs here, as MRS is a debt collector and is subject to the terms of the statute.

However, federal courts also have seen fit to impose vicarious liability upon debt collectors for the actions of other entities hired to collect debt. *See, e.g., Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (holding that "an entity that is itself a 'debt collector' – and hence subject to the FDCPA – should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"). In *Pollice*, the Court of Appeals for the Third Circuit held that a debt collector could be liable for the FDCPA violations of its "servicing agent." *Id*. Notably, both entities (the debt collector and its servicing agent) were

---

*Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000)).

limited partnerships that shared a common general partner. Further, the Court's decision was an extension of the principle that debt collectors can be held liable for an attorney whose conduct allegedly violated the FDCPA. *Id*. at 404 (citing *Fox v. Citicorp Credit Services, Inc.*, 15 F.3d 1507 (9th Cir. 1994)).

Like *Kimber* and *Pollice*, the remaining cases cited by Scally, which impose or discuss the imposition of vicarious liability, involve attorneys hired by debt collectors to engage in debt collection[4] or general partnerships.[5] Relying on these cases, Scally seeks to impose liability upon Hilco for the actions of MRS under general principles of agency law. However, the cases on which Scally relies stem less from principles of agency than from a genuine concern that imposing liability on debt collectors for the actions of retained counsel was necessary – in light of the FDCPA's original "all purpose" exemption for attorneys – to protect debtors from predatory or harassing collectors who might otherwise act, though their attorneys, with impunity. *See, e.g., Fox v. Citicorp Credit Servs.*, 15 F.3d 1507, 1516 (9th Cir. 1994) (concluding that Congress intended to impute the actions of the attorney to the client, otherwise provisions

---

[4]*See, e.g.*, *Martinez v. Albuquerque Collection Servs.*, 867 F. Supp. 1495, 1502 (D.N.M. 1994) ("[d]ebt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct"); *Caron v. Maxwell*, 48 F. Supp. 2d 932, 936 (D. Ariz. 1999) ("courts have held that the client of an attorney working as a 'debt collector" as defined in § 1692a(6) of the FDCPA is only liable for his attorney's violations if both the attorney and the client are debt collectors within the meaning of the statute"); *Alger v. Ganick, O'Brien & Sarin*, 35 F.Supp. 2d 148, 153 (D. Mass. 1999) (observing, in case involving alleged FDCPA violations by process server, that "numerous courts utilize agency principles to make a principal vicariously liable for the acts of his authorized or apparent agent under the FDCPA").

[5]*See, e.g., Randle v. GC Servs., L.P.*, 25 F. Supp. 2d 849, 851 (N.D. Ill. 1998) (observing that general principles of agency and partnership law may be used to determine liability under the FDCPA).

6

establishing liability for venue violations would have no little or no effect); *Kimber*, 668 F. Supp. at 1486 (holding that clients were not immune from liability for the actions of retained counsel, lest "a debt collector . . . simply evade the Act by hiring an attorney to do what it could not do itself").

Even if I were to consider general principles of agency law, it is not clear that Hilco should be liable for MRS's collection activities. The Tentative Draft of the Third Restatement of Agency defines agency as "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control . . ." *Restatement (Third) of Agency* § 1.01 (T.D. No. 2, 2001). *See also Warren A. Seavy, Handbook of the Law of Agency*, §3 (1977) ("agency is a consensual, fiduciary relation between two persons, created by law by which one, the principal, has a right to control the conduct of the agent, and the agent has a power to affect the legal relations of the principal"). Scally attempts to demonstrate Hilco's control of MRS's collection activities through several facts, including: monthly conference calls and daily and weekly email communications between Hilco and MRS; Hilco's reservation of final approval authority for any settlements at less than 80 percent of the debt owed; and Hilco's control over the reporting of its debtors' debt to credit reporting agencies.

These facts are not sufficient to establish that MRS acted merely as an agent of Hilco. MRS's daily, weekly and monthly routine reports of its activities were not intended to, and did not, give Hilco control over MRS's routine interactions with debtors.[6] Scally offers no facts

---

[6]The daily report listed the previous day's gross collections; the weekly report provided only a summary of the previous week's collections. There is no evidence that this information was account-specific. The monthly report offered only a slightly greater level of detail: it

suggesting that Hilco controlled either the mechanisms or the content of MRS's contact with debtors, other than to outline general principles by which MRS would abide: *i.e.*, observing the requirements of the FDCPA. MRS had complete freedom to determine settlement amounts that were at or above 80 percent of the amount owed by the debtor.[7] Hilco did not attempt to contact debtors, and would only reluctantly accept payments directly from debtors. The fact that Hilco reserved the right to report debtors' debt to credit reporting agencies says nothing about its control over MRS's interaction with debtors. Finally, Scally fails to offer any evidence suggesting that Hilco exerted control or had the contractual right to assert control over the content of the allegedly infringing collection letter MRS mailed to Scally.[8]

For its part, Hilco argues that it cannot be liable to Scally under traditional agency principles because MRS acted as its independent contractor, not as its agent.[9] Hilco would require a finding "interdependence" before imposing liability on debt collectors who contract

---

included a statement of amounts remitted, a "batch track" report for each account and a list of accounts on which no activity had occurred. Assuming that some of the information in the monthly report was account-specific, Scally fails to point to evidence suggesting that Hilco relied on this information to engage in any type of activity that might be considered account management.

[7]Hilco's approval of settlement offers below that threshold did not involve it in the mechanism by which debtors were contacted nor did it give Hilco control over communication between debtors and MRS. Moreover, Scally presents no facts suggesting that settlements below the 80-percent threshold occur with any frequency or comprise the majority of settlements.

[8]These are the only relevant facts on which the parties relied in their Local Rule 56.1 statements and memoranda supporting and opposing summary judgment.

[9]The drafters of the Third Restatement eschew use of the term "independent contractor," observing that "the common term 'independent contractor' is equivocal in meaning and confusing in some usage because some termed independent contractors are agents while others are nonagent service providers." *Restatement (Third) of Agency*, §1.01, cmt. c (T.D. No. 2, 2001).

8

with others to engage in the actual collection of debt, borrowing the test imposed upon corporate parents and their subsidiaries. *See Jenkins v. Union Corp.*, 999 F. Supp. 1120, 1142-43 (N.D. Ill. 1998) ("[t]o find [parent] liable as an indirect debt collector under the FDCPA, plaintiffs must show [parent] and [subsidiary] share an interdependence that renders them a 'single economic enterprise'") (citation omitted). *See also Wells v. McDonough*, 1999 WL 162796 *1 (N.D. Ill. 1999) (noting that a plaintiff could demonstrate interdependence "by presenting evidence such as inadequate capitalization or a failure to observe the legal requirement of separate corporate existence") (citing *Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 979-80 (7th Cir. 1998)). In *Wells*, Judge Marovich concluded that facts showing the maintenance of separate corporate records and banking accounts, a separate board of directors and separate physical offices demonstrated a lack of interdependence. *Id*. at *2. The single fact that the two entities shared a legal office did not support an inference that the entities were interdependent. *Id*.

In this case, the physical and financial separation of Hilco and MRS is not questioned. Moreover, the facts discussed above not only demonstrate that MRS was not Hilco's agent under traditional agency principles, but that there was no "interdependence" between the two entities. Were MRS a subsidiary of Hilco, which it is not, Scally has failed to raise enough evidence to pierce the corporate veil.

In light of these facts, I decline to hold Hilco vicariously liable for MRS's allegedly unclear and confusing dunning letter. Hilco did not act indirectly within the meaning of § 1692a when it hired MRS to collect Scally's debt. I recognize that it may appear inconsistent to find that Hilco could be held accountable for the actions of a law firm retained to collect Scally's debt, but not the actions of another company with whom Hilco contracted for essentially the

9

same purpose. Nonetheless, the law recognizes a distinction between the actions of retained counsel and those of subsidiary corporations and I see no need to disregard formalities in the case of retained counsel and independent contractors.

***Plaintiff's Theory of Direct Debt Collection***

Alternatively, Scally seeks to impose liability upon Hilco as a direct debt collector. Scally contends that when Hilco reported her debt to credit reporting agencies in the "normal course of business" it acted directly to collect on her debt. *Cf. Sullivan v. Equifax, Inc.*, 2002 U.S. Dist. LEXIS 7884, *15 (E.D. Pa. April 19, 2002) (holding that a report of *false* information to a credit reporting agency could expose a debt collector to liability under § 1692e of the FDCPA) (emphasis added); *and Akalwadi v. Risk Mgt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 (D. Md. 2004) ("a debt collector's reporting of a consumer's debt to a credit reporting agency would be covered by FDCPA § 1692e if the communication is false, deceptive or misleading").[10] In this case, I need not rule on whether or not accurate reporting of debt to a credit reporting agency might constitute direct debt collection within the meaning of § 1692a(6), as that conduct does not form the basis of Scally's claim. Scally cannot rely on this wholly unrelated activity in order to establish that Hilco is liable, by virtue of its own "direct" action, for MRS's conduct in attempting to collect her debt.

---

[10]In a footnote, the District Court suggests that the act of reporting consumer debt is an act "'in connection with' the collection of a debt." *Id*. at n. 4. Scally suggests that this renders all debt collectors who report debt to credit agencies "direct" collectors under § 1692a(6).

For these reasons, Defendants Hilco and LCP's Motion for Summary Judgment is GRANTED. Plaintiff Scally's Renewed Motion to Compel Answers to Discovery from Defendants Hilco and LCP is DENIED as moot.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: June 23, 2005